[Cite as *In re L.C.*, 2015-Ohio-391.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re L.C.

Court of Appeals No.  L-14-1077

Trial Court No.  13236539

**<u>DECISION AND JUDGMENT</u>**

Decided:   January 30, 2015

* * * * *

Patricia Horner, for appellant.

Julia R. Bates, Prosecuting Attorney, and Patricia S. Wardrop,
Assistant Prosecuting Attorney, for appellee.

* * * * *

**YARBROUGH, P.J.**

## I.  Introduction

**{¶ 1}** Appellant, L.C., appeals the judgment of the Lucas County Court of

Common Pleas, Juvenile Division, adjudicating her delinquent on four counts of rape.

For the following reasons, we affirm.

## A. Facts and Procedural Background

{¶ 2} This matter arises out of allegations of rape made by appellant's ten-year-old female cousins, Dan.T. and Dai.T (collectively referred to as "the girls"). On May 14, 2013, the girls informed their legal custodian, E.J., that appellant had shown them pornographic videos and forced them to touch her and allow her to touch them in the vaginal area, resulting in digital penetration.

{¶ 3} Upon hearing the girls' report, E.J. followed up with a Sexual Assault Nurse Examiner, and was ultimately referred to the Toledo Police Department and the Children's Advocacy Center. E.J. proceeded to take the girls to the Children's Advocacy Center, where they were examined by Dr. Randall Schlievert. The girls also met with a detective working for the Toledo Police Department, Rebecca Kincaid. After interviewing the girls, Kincaid contacted appellant's mother, M.D., and scheduled an interview with appellant.

{¶ 4} Following Kincaid's interview of appellant, appellant was charged with four counts of rape in violation of R.C. 2907.02(A)(1)(b). A bench trial was subsequently held on February 7, 2014.

{¶ 5} As its first witness, the state called Dan.T. When asked about the incidents for which appellant was charged, Dan.T. stated that she and her sister were upstairs in appellant's bedroom when appellant began asking them to have sex with her. She went on to indicate that she and Dai.T. refused. Notwithstanding the refusals, appellant

2.

persisted in showing graphic pornographic videos to the girls using her tablet and her cell phone. Dan.T. further testified that appellant asked her and her sister to remove their clothes. According to Dan.T., appellant convinced the girls to get into her bed, where appellant started "telling us to put our fingers in her private part, and then she [did] that back to me and my sister. And she [made] us kiss her in her mouth, and [put] her fingers in me and my [sister's] private parts, and it [hurt] every time she [did] that." Upon further questioning, Dan.T. explained that she was referring to her vaginal area when she stated that appellant digitally penetrated her "private parts." Dan.T. stated that she told appellant to stop, but appellant did not comply. When appellant was finished, she forced the girls to "pinky promise" not to tell anyone about the incident.

{¶ 6} Dai.T. was the state's next witness. During her testimony, Dai.T. indicated that appellant would "touch" her whenever she visited appellant's house. She also stated that appellant showed her pornographic videos on appellant's iPod. Dai.T. testified that Dan.T. was not present in the room when appellant showed her the video. According to Dai.T., appellant then proceeded to insert her fingers into the girls' vaginal areas, and also made the girls touch her vaginal area. However, on cross examination, she reported that nothing happened to Dan.T. while Dai.T. was in the room.

{¶ 7} The state then called E.J. to testify. E.J. stated that Dai.T. informed her of appellant's conduct after returning home from appellant's house. Specifically, E.J. testified:

3.

[Dai.T.] began to tell me how she was sorry that she had to break the pinky promise between her and [appellant] and her dad and herself but that she didn't want to go back to [appellant's] house no more because when they [are] there, they go upstairs in the room and watch sex videos on [appellant's] iPad and notebook and that she tell them that they tell her that she don't want to do it but [appellant] makes them do it. And she went very explicit like what it was they did, what they did to her, what she did to them.

{¶ 8} After receiving the foregoing information, E.J. called Dan.T. into the room and questioned her about the "pinky promise." E.J. stated that Dan.T. told the "same story just not in the same way, but all the details were the same."

{¶ 9} Following E.J.'s testimony, the state called Dr. Schlievert as an expert in child sexual abuse. In his testimony, Dr. Schlievert indicated that he examined the girls following the allegations of sexual abuse. During his examination of Dan.T., she informed Dr. Schlievert that appellant vaginally penetrated her with her hands and fingers. Dai.T. reported similar abuse during her interview, adding that appellant forced her to watch pornographic videos and also forced her to perform sexual acts on appellant. Dr. Schlievert also stated that he conducted a physical examination on the girls. He was able to observe submucosal hemorrhages on Dai.T.'s hymen and urethra consistent with trauma in that region. Dr. Schlievert was unable to discover any physical signs of abuse during his examination of Dan.T. Dr. Schlievert explained that a lack of physical signs of

4.

abuse is not uncommon in child sexual abuse cases, given the amount of time that frequently passes between the abuse and the reporting of such abuse. In light of the extended period of time that occurred in this case between the abuse and his examination of the girls, Dr. Schlievert testified that finding physical evidence of abuse would have been "the exception rather than the norm." Ultimately, Dr. Schlievert determined that Dan.T. and Dai.T. were sexually abused. Dr. Schlievert based his conclusions on the girls' behavior, medical histories, and the physical examination he conducted.

{¶ 10} Upon the conclusion of Dr. Schlievert's testimony, the state rested. Defense counsel moved for a directed verdict, which was denied. Appellant then presented the testimony of D.T. and M.D.

{¶ 11} D.T. is the biological father of Dan.T. and Dai.T. D.T. testified that the girls first informed him of the sexual abuse at E.J.'s house several days after it allegedly occurred. He further stated that the girls later revealed to him that E.J. coerced them into lying about the sexual abuse.

{¶ 12} During M.D.'s testimony, she maintained that appellant did not have an internet-capable cell phone or tablet at the time of the alleged sexual abuse. Thus, M.D. insisted that appellant could not have shown pornography to the girls as previously reported.

{¶ 13} At the conclusion of the trial, the trial court adjudicated appellant delinquent on all four counts. The matter was then continued for disposition. At disposition, the court ordered appellant committed to the Department of Youth Services

5.

for a period of one year up to the age of 21 on each count, to be served concurrently. The court then stayed the execution of the commitments and placed appellant on community control. Appellant's timely notice of appeal followed.

### B. Assignments of Error

{¶ 14} On appeal, appellant assigns the following errors for our review:

    I. THE TRIAL COURT'S ADJUDICATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

    II. THE TRIAL COURT'S DETERMINATION WAS AN ABUSE OF DISCRETION.

### II. Analysis

{¶ 15} In appellant's first assignment of error, she argues that the trial court's adjudication was against the manifest weight of the evidence. In her second assignment of error, appellant contends that the trial court abused its discretion in that "the evidence did not support a finding that * * * [appellant] committed four counts of rape." Essentially, appellant's second assignment of error repeats the same argument advanced in the first assignment of error. Thus, we will address the assignments of error simultaneously.

{¶ 16} When reviewing a manifest weight claim,

    The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines

whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). R.C. 2907.02 provides, in relevant part:

(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:

* * *

(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶ 17} Here, appellant does not challenge the sufficiency of the evidence, as it is clear from the record that the state introduced evidence on every element of the charged offense. However, appellant argues that the juvenile court's adjudication was against the manifest weight of the evidence in light of numerous conflicts in the testimony given by the state's witnesses. Specifically, appellant contends that the testimony provided by

7.

Dan.T. was inconsistent with Dai.T.'s testimony on the issue of "what happened and when, who was present, how often anything took place, [and] where these events took place."

{¶ 18} Contrary to appellant's assertions, we find the record reveals remarkable consistency among the state's witnesses. With regard to the girls' testimony, we note that each of them indicated that appellant forced them to view pornography and then proceeded to digitally penetrate them while making them do the same to her. The girls told the same story when interviewed by Kincaid following the incident. Moreover, their interview with Dr. Schlievert was consistent with their testimony at trial. Finally, Dr. Schlievert's findings of sexual abuse, supported in part by his observation of submucosal hemorrhages on Dai.T.'s hymen and urethra, clearly support the trial court's verdict in this case.

{¶ 19} While appellant makes much of the fact that some of the witnesses were not consistent on exact dates and times on which sexual abuse occurred, we do not find that such inconsistencies present the exceptional case in which the evidence weighs heavily against the conviction. This is especially true given the girls' ages and the amount of time that passed between the incidents and the trial. Thus, we conclude that the trial court's adjudication was not against the manifest weight of the evidence.

{¶ 20} Accordingly, appellant's first and second assignments of error are not well-taken.

8.

### III. Conclusion

**{¶ 21}** The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.  The clerk is ordered to serve all parties with notice of this decision.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                           _____
                                                       JUDGE

Thomas J. Osowik, J.

                                       _____
Stephen A. Yarbrough, P.J.                         JUDGE
CONCUR.

                                       _____
                                                       JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.